IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>Baltimore Field Office<br>31 Hopkins Plaza, 14th Floor<br>Baltimore, Maryland 21201<br>Baltimore City<br><br>        Plaintiff,<br>v.<br><br>SINCLAIR BROADCAST GROUP, INC.,<br>10706 Beaver Dam Road<br>Cockeysville, Maryland 21030<br>Baltimore County<br><br>        Defendant. | CIVIL ACTION NO. 1:22-cv-02406<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (ADA), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Kristina Pierre.  As alleged with greater particularity below, Defendant Sinclair Broadcast Group, Inc. violated the ADA when it discriminated against Charging Party because of disability.

JURISDICTION AND VENUE

1.        Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act

1

of 1991, 42 U.S.C. § 1981a. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

2. Plaintiff, the Equal Employment Opportunity Commission (the Commission or EEOC), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

3. At all relevant times, Defendant Sinclair Broadcast Group, Inc. (Defendant or Sinclair), a Maryland corporation, has continuously been doing business in Cockeysville, Maryland, and has continuously had at least 15 employees.

4. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

5. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of the ADA by Defendant.

7. On August 3, 2021, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On February 3, 2022, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

10. Defendant is a publicly traded telecommunications company headquartered in Cockeysville, Maryland.

11. Charging Party is disabled as defined by the ADA, including a diagnosis of schizoaffective disorder, bipolar type.

12. Charging Party began working for Defendant as a Help Desk Technician on September 30, 2019.

13. On December 29, 2019, Charging Party passed Defendant's 90-day introductory period and was given a raise.

14. Before Defendant learned of Charging Party's disability, the company praised her job performance. Before learning of the disability, Defendant did not issue Charging Party any warning or counseling, did not initiate any disciplinary proceedings against her, and took no adverse employment action against her.

15. On or around January 7, 2020, Defendant's management staff, Eddie Miles and Alan Johnson, met with Charging Party during the workday. At the time, Miles was the Assistant Manager of the Service Desk and Johnson was the Manager of the Service Desk.

16. During the meeting described in Paragraph 15, Miles and Johnson learned that Charging Party has a disability.

17. After the meeting described in Paragraph 15, Charging Party returned to her work desk and completed her shift that day without incident.

18. On or around January 13, 2020, toward the end of her shift, Charging Party took a break in a conference room.

19. Defendant's policies do not prohibit employees from taking a break during the workday, including taking a break in the conference room.

20. While Charging Party was on the break, Miles, the Assistant Manager of the Service Desk, came into the conference room and encouraged Charging Party to use the break to express her frustrations and concerns.

21. Charging Party was not the only help desk technician who was encouraged to express her frustrations resulting from the work environment in the Service Desk department. In front of subordinates, including Charging Party, Miles talked about "stabbing people" and knives; according to Miles he engaged in this conduct as a means of helping his subordinates "relax" and "get through the day."

22. After the break described in Paragraph 18, Charging Party exited the conference room and left the workplace without incident.

23. Miles did not counsel or discipline Charging Party for anything that occurred the day she took the break described above, including anything Charging Party said or did during or after the break.

24. On the evening of January 13, Alan Johnson called Charging Party and suspended her. Johnson told Charging Party not to come to work on January 14.

25. During the call described in Paragraph 24, Johnson did not tell Charging Party that she had done anything wrong, that she violated any work rule, or that she failed to meet any performance expectation.

26. After Charging Party was suspended, Johnson and Defendant's Human Resources Representative, Patricia Rosol, talked to her on the telephone.

27. During the telephone call described in Paragraph 26, Rosol made inquiries about Charging Party's disability, medication, and medical history, and told Charging Party that she could not come back to work unless she submitted a doctor's note saying she could return.

28. Defendant did not set a deadline for Charging Party to submit the doctor's note referenced in Paragraph 27.

29. Charging Party submitted a doctor's note to Defendant that said she could return to work without limitations.

30. On January 17, 2020, Defendant told Charging Party that the doctor's note she submitted was insufficient and ordered her to obtain another doctor's note. Charging Party asked what the note should say, but Defendant did not provide any detail.

31. Defendant did not set a deadline for Charging Party to submit the additional doctor's note described in Paragraph 30.

32. On January 24, 2020, and before Charging Party submitted the additional doctor's note described in Paragraph 30, Rosol and Defendant's Human Resources Director, Melissa Yim, called Charging Party and told her she was fired.

33. At all relevant times, Charging Party was a person with a disability under Section 3 of the ADA, 42 U.S.C. §12102, as amended.

34. At all relevant times, Charging Party was a qualified individual under Section 101(8) of the ADA, 42 U.S.C. §12111(8), as amended.

35. The ADA defines a qualified individual as a person with a disability who meets the necessary skills, experience, education, and other job-related requirements of the position they hold, and can perform the essential functions of the position with or without a reasonable accommodation.

36. Defendant discriminated against Charging Party because of disability in violation of Section 102 of the ADA, 42 U.S.C. §12112, as amended, by engaging in prohibited conduct, including but not limited to: taking adverse employment action against her because of disability (including regarding her as disabled or because she has a record of disability), including subjecting her to disparate treatment; depriving Charging Party of the rights and protections secured by the ADA; failing to engage in the interactive process and otherwise fulfill duties and obligations imposed on employers by the Act; and suspending and firing Charging Party.

37. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Sinclair Broadcast Group, Inc., its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from: discriminating against individuals with disabilities through, *inter alia*, relying solely on perceptions of an employee's disabilities to determine whether they are qualified for the position; operating without mechanisms that require supervisors, managers, and human resources personnel to comply with the ADA; allowing supervisors, managers, and

human resources personnel to take adverse action against employees because of disability or perceived disability; sustaining an environment in which supervisors, managers, and human resources personnel create justifications for their decisions without substantial and effective review and thus employees suffer adverse employment actions for pretextual reasons; and otherwise maintaining a bias against people with disabilities based on fear and stereotypes.

   B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities or individuals Defendant perceives to be disabled, and which eradicate the effects of its past and present unlawful employment practices.

   C. Order Defendant to make whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay.

   D. Order Defendant to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

   E. Order Defendant to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial.

   F. Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN Y. REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel


s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney

s/Kate Northrup
KATE NORTHRUP
Supervisory Trial Attorney

s/Emily Datnoff
EMILY DATNOFF, Bar No. 29464
Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Baltimore Field Office
31 Hopkins Plaza, Suite 1432
Baltimore, Maryland 21201
Emily.Datnoff@eeoc.gov
Phone: (410) 801-6708
Fax: (443) 992-7880